UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SCOTT HENSLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Case No. 10-636 (RJL) |
| | ) | |
| OFFICE OF THE ARCHITECT OF THE CAPITOL, | ) | |
| | ) | |
| STEPHEN AYERS, the Architect of the Capitol, in his personal capacity, | ) | |
| | ) | |
| REBECCA TISCIONE, a retired employee of the Architect of the Capitol, in her personal capacity, | ) | |
| | ) | |
| EVELYN GOODWIN, an employee of the Architect of the Capitol, in her personal capacity, | ) | |
| | ) | |
| TONDA CAVE, an employee of the Architect of the Capitol, in her personal capacity, | ) | |
| | ) | |
| EDGARD MARTINEZ, an employee of the Architect of the Capitol, in his personal capacity, | ) | |
| | ) | |
| WILLIAM WEIDMEYER, an employee of the Architect of the Capitol, in his personal capacity, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| WILLIAM MILLER, an employee of the Architect of the Capitol, in his personal capacity, | ) | |
| | ) | |
| Defendants. | ) | |

V d
# MEMORANDUM OPINION
(August 23, 2011) [#9]

Plaintiff Scott Hensley ("plaintiff") brought an action against defendant Office of the Architect of the Capitol ("AOC") alleging the following violations of the Congressional Accountability Act ("CAA"): (1) the AOC subjected plaintiff to unlawful retaliation when it refused to interview or promote plaintiff to an assistant supervisor position, in violation of the CAA; and (2) the AOC subjected plaintiff to a hostile work environment, in violation of the CAA. Additionally, plaintiff alleges that Stephen Ayers, Rebecca Tiscione, Evelyn Goodwin, Tonda Cave, Edgard Martinez, William Weidmeyer, and William Miller ("the defendants"), sued in their personal capacities, violated plaintiff's substantive and procedural rights under the Fifth Amendment. The defendants have moved to dismiss those defendants being sued in their personal capacities. After careful consideration of the law and pleadings, defendants' Motion to Dismiss each individual defendant is GRANTED.

## BACKGROUND

Plaintiff was an employee of the High Voltage Division of the AOC at the time the events giving rise to the instant action occurred. Compl. ¶¶ 4, 8-10. Corey Howell, another employee of the High Voltage Division, filed an administrative complaint under the CAA with the AOC. *Id.* ¶¶ 21-22. Mr. Howell deposed plaintiff during the course of Mr. Howell's administrative case. *Id.* ¶ 25. Plaintiff's deposition was a protected activity under the CAA and thus subject to the confidentiality guarantee of the CAA and certain Procedural Rules of the AOC's Office of Compliance. *Id.* ¶¶ 25-26.

2

Subsequent to plaintiff's deposition in the Howell matter, he learned that defendant AOC had brought disciplinary charges against his second-level supervisor, Rick Crupi ("Supervisor Crupi" or "Crupi"). *Id.* ¶¶ 27-29. The charges against Supervisor Crupi were based in part on plaintiff's confidential and sworn testimony in the Howell matter. *Id.* ¶ 27. Plaintiff was advised that he was to testify at the disciplinary hearing. *Id.* ¶ 31.

In preparation for his disciplinary hearing, Supervisor Crupi met with plaintiff and questioned him about the damaging testimony that he expected the plaintiff to provide at the disciplinary hearing. *Id.* ¶ 33. Plaintiff alleges that Supervisor Crupi attempted to get him to testify that he had never heard Supervisor Crupi use discriminatory language based on race in the workplace—a statement that would have been contrary to plaintiff's testimony in the Howell matter. *Id.* ¶ 34. Unbeknownst to plaintiff, Supervisor Crupi had already been provided the confidential testimony given by plaintiff in the Howell matter. *Id.* ¶ 36. Subsequent to his meeting with Supervisor Crupi, plaintiff learned that Edgard Martinez, Assistant General Counsel of the AOC, had provided Crupi access to plaintiff's confidential testimony. *Id.* ¶ 37.

Subsequent to plaintiff's meeting with Supervisor Crupi, AOC issued a vacancy announcement for the position of Assistant Supervisor of the High Voltage Division, to which plaintiff applied. Id. ¶¶ 38-39. Supervisor Crupi was in charge of hiring for the open position. Id. ¶ 40. Although plaintiff was rated as "highly qualified" for the position, he was denied an interview. Id. ¶¶ 41, 42. Later, AOC withdrew the vacancy announcement. Id. ¶ 43.

On or about August 5, 2009, the AOC re-posted the Assistant Supervisor position vacancy announcement, to which plaintiff applied and was provided an interview. Id. ¶¶ 45-48. Supervisor Crupi was no longer in charge of hiring for the open position. Id. ¶ 49. Plaintiff, nonetheless, was not selected for the position. Id. ¶ 53.

As a result, plaintiff filed this lawsuit on April 23, 2010, seeking damages against his employer, AOC, for retaliatory employment practices and actions in violation of the CAA, and against certain defendants, in their personal capacities, for violating his rights under the Fifth Amendment of the Constitution. *See* Docket Entry 1; Compl. ¶¶ 57, 62, 68. On September 29, 2010, defendants filed a Motion to Dismiss those defendants being sued in their personal capacities. *See* Docket Entry 9.

## STANDARD OF REVIEW

A court may dismiss a complaint, or any portion of it, for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). A court considering a motion to dismiss, however, may only consider "the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). To survive a motion to dismiss, a complaint must "plead [ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, ---U.S.---, 129 S. Ct. 1937, 1949 (2009). In evaluating a Rule 12(b)(6) motion, the court construes the complaint "in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979) (internal

4

quotation marks omitted). However, factual allegations, even though assumed to be true, must still "be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Moreover, the court "need not accept inferences drawn by plaintiff[] if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

## LEGAL ANALYSIS

*I.    Failure to Satisfy Federal Rule of Civil Procedure 8*

Plaintiff has failed to plead enough facts to state a facially plausible claim against defendants—with the exception of Assistant General Counsel Martinez. To sufficiently state a claim upon which relief can be granted, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 127 S. Ct. at 1974). A complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the defendant-unlawfully-harmed me accusation. A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (internal citations omitted).

Here, plaintiff sufficiently alleges that Assistant General Counsel Martinez released his deposition testimony to Supervisor Crupi's attorney in violation of the

5

confidentiality provision of the CAA,[1] which in turn, violated plaintiff's Fifth Amendment right. However, with respect to the other defendants sued in their personal capacities, plaintiff merely alleges in a conclusory manner that they violated his constitutional rights. Compl. ¶¶ 68-70. Indeed, plaintiff fails to allege any improper action on their parts or, for that matter, any knowledge of Assistant General Counsel Martinez's alleged improper actions. He simply alleges that the other defendants were part of the process that led to Supervisor Crupi's suspension, without claiming that any of their actions specifically were improper.[2] Thus, the allegations against Assistant General Counsel Martinez are the only allegations from which the Court may draw a reasonable inference that defendant is liable for the alleged violation of plaintiff's Fifth Amendment

---

[1] The confidentiality provision of the CAA states that, absent certain exceptions that do not apply in this case, all proceedings and deliberations of hearing officers and the Board, including any related records, shall be confidential. See 2 U.S.C. § 1416(c).

[2] Specifically, as to Stephen Ayers (Acting Architect of the AOC), Rebecca Tiscione (former Director of the former Human Resources Management Division of the AOC), and Evelyn Goodwin (Chief of the Employee Relations Branch of the former Human Resources Management Division of the AOC), the complaint alleges that they "engaged in, reviewed, and approved" Supervisor Crupi's suspension proposal and the suspension that were part of an internal disciplinary process "based in whole or in part on the unconstitutional and unlawful use" of Plaintiff's confidential deposition testimony. Compl. ¶¶ 11, 13, 14. As to Tonda Cave (a Human Resources Specialist), the complaint alleges she "prepared, was engaged in, reviewed, and approved" the suspension proposal that was part of an internal disciplinary process "based in whole or in part on the unconstitutional and unlawful use" of Plaintiff's confidential deposition testimony. Id. ¶ 15. As to William Weidmeyer, the complaint alleges he "engaged in, reviewed, approved, and concurred in Supervisor Crupi's suspension proposal that was part of an internal disciplinary process "based in whole or in part on the unconstitutional and unlawful use" of Plaintiff's confidential deposition testimony. Id. ¶ 17. Finally, as to William Miller (a Supervisory Electrical Engineer), the complaint alleges he was "engaged in, reviewed, approved and proposed the suspension" that was part of an internal disciplinary process "based in whole or in part on the unconstitutional and unlawful use" of Plaintiff's confidential deposition testimony. Id. ¶ 19.

right. Therefore, the Motion to Dismiss Stephen Ayers, Rebecca Tiscione, Evelyn Goodwin, Tonda Cave, William Weidmeyer, and William Miller as to Count III must be GRANTED.

## II. Violation of Plaintiff's Fifth Amendment Right

In his complaint, plaintiff alleges that defendants violated his Fifth Amendment right to property by "unconstitutionally depriv[ing] plaintiff of his unambiguous entitlement to confidentiality under the Congressional Accountability Act." Compl. ¶ 70. This contention, unfortunately, is a red herring. To date, the only property rights that have been judicially recognized as protected by the Constitution are welfare benefits and employment, for example, for tenured professors. *See Goldberg v. Kelly*, 397 U.S. 254 (1970); *Perry v. Sindermann*, 408 U.S. 593 (1972); *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564 (1972). Indeed, plaintiff has failed to cite any binding authority recognizing "confidentiality" as a property right.[3] Moreover, the Supreme Court has

---

[3] Plaintiff analogizes his claim to an alleged property interest in employment addressed by the D.C. District Court in *Vanouver v. Hantman*, 775 F. Supp. 2d 91 (D.D.C. 1999), which found in dicta that a former AOC employee had a constitutionality protected property right in his continued employment. The employment interest in *Vanouver* is unrelated to the confidentiality interest in the instant action. Plaintiff provides no caselaw supporting his allegation that the confidentiality guaranteed by the CAA is a constitutionally protected right.

Citing to *Vanouver*, plaintiff contends in his response brief that Defendants violated his due process interest in employment. *See* Pl.'s Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Opp'n"), p. 21. However, as to all of the personally-sued defendants, plaintiff's complaint fails to allege facts that, if true, state a plausible claim that Defendants violated any property interest in employment. *See Iqbal*, 129 S. Ct. at 1940-41. Plaintiff's allegations strictly relate to the breach of confidentiality caused by the release of his deposition testimony, not to the loss of any employment interest. Compl. ¶ 70 ("[Defendants] unconstitutionally deprive[d] Plaintiff of his unambiguous entitlement to confidentiality under the [CAA].")

been reluctant to recognize new property interests, particularly when the interest does not have "some ascertainable monetary value" under the entitlement, such as financial payments under Medicaid. *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 766-67 (2005) (holding that an individual entitlement to enforcement of a restraining order "does not have some ascertainable monetary value, as even our *Roth*-type property-as-entitlement cases have implicitly required" (internal quotation marks and citation omitted)). Thus, there is no legally viable argument here that plaintiff's statutory right to confidentiality was protected by the Fifth Amendment as a property interest. However, construing plaintiff's complaint in the light most favorable to the plaintiff, the Court finds plaintiff's allegation would more appropriately be styled as an argument that defendants violated his constitutional right to privacy.[4]

Unfortunately for the plaintiff, however, our Circuit Court has not recognized a general right to privacy. At most, the Circuit Court has addressed the right to privacy in the context of the disclosure of personal information. But even in that context, our Circuit Court has expressed "grave doubts as to the existence of a constitutional right of privacy in the nondisclosure of personal information." *Am. Fed'n of Gov't Emps. v. Dep't of Hous. & Urban Dev.*, 118 F.3d 768, 791 (D.C. Cir. 1997). That skepticism stems not only from the "apparent hesitance" of the Supreme Court to recognize explicitly such a right, but also from the fact that those circuits that have recognized this right did so based in reliance on Supreme Court dicta. *Id.* at 791-93.

---

[4] Defendants also have construed plaintiff's argument as one contending that Defendants violated plaintiff's substantive due process rights, specifically, his right to privacy. *See* Defendant's Mot. to Dismiss, p. 10-11.

8

As such, it is highly unlikely that such a right to privacy would be recognized by our Circuit Court in this case. Indeed, in *American Federation of Government Employees*, the private information at issue related to the employee's finances, drug use, mental health, and expunged criminal history—matters quite personal to the employees. *Id.* at 788. Here, the confidential testimony that was released was not information personal to the plaintiff but testimony he gave characterizing his supervisor's conduct. As such, this Court sees no likelihood whatsoever that our Circuit Court would conclude that a plaintiff has a constitutional privacy interest in such information. Therefore, Defendants' Motion to Dismiss Count III is GRANTED as to each individual defendant.[5]

### III. Bivens Claim

Finally, even if there was a right to privacy for such confidential information—which this Court finds there is not—plaintiff's complaint as to the defendants named in their personal capacity should be dismissed. An action for damages brought against federal officials in their individual capacity pursuant to the U.S. Constitution is commonly referred to as a *Bivens* claim. *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 397 (1971) (holding plaintiff may sue federal agents for money damages for violation of his constitutional rights). However, the Supreme Court "in most instances" has found the *Bivens* remedy to be "unjustified."

---

[5] Plaintiff contends for the first time in his response brief in a conclusory fashion that "Defendants sued in their personal capacities denied plaintiff procedural due process, notice and opportunity to be heard respecting the serial disclosure and dissemination of his . . . deposition testimony." Pl's Opp'n at 22. Nowhere in the complaint does plaintiff allege that defendants failed to provide notice and an opportunity to be heard, nor any facts to support this contention. *See Iqbal*, 129 S. Ct. at 1940. Therefore, we will not address this argument.

*Wilkie v. Robbins*, 551 U.S. 537, 550 (2007). Indeed, in more recent "decisions[, it has] responded cautiously to suggestions that *Bivens* be extended into new contexts." *Schweiker v. Chilicky*, 487 U.S. 412, 421 (1988). There are two instances, however, where it is clearly *not* appropriate to award money damages in a *Bivens* claim. *Bivens*, 403 U.S. at 396. First, when there are "special factors" counseling against creating a *Bivens* remedy, and second, where there is a congressional declaration prohibiting recovery of monetary damages or remitting recovery to another equally effective remedy. *Id.* In a motion to dismiss, the defendant bears the burden to prove the existence of either of these two instances. *See Carlson v. Green*, 446 U.S. 14, 18-19 (1980). Here, defendants have done so by relying on the "special factor" of a comprehensive procedural and remedial scheme: the CAA.[6]

Plaintiff contends defendants unconstitutionally violated the confidentiality provision of the CAA, 2 U.S.C. § 1416. Compl. ¶ 3. The CAA, however, provides a specific remedy for injury caused by a breach of the confidentiality provision of the CAA by its incorporation of the retaliation concept from Title VII of the Civil Rights Act of 1964.[7] *See* 2 U.S.C. § 1317. Indeed, our Circuit Court has held repeatedly that Title VII

---

[6] Our Circuit Court previously has held other comprehensive procedural and remedial schemes to constitute a "special factor" precluding *Bivens* remedies. *See Wilson v. Libby*, 535 F.3d 697 (D.C. Cir. 2008) (holding the Privacy Act to constitute a "special factor" precluding a *Bivens* remedy); *Spagnola v. Mathis*, 859 F.2d 223 (D.C. Cir. 1988) (en banc) (recognizing the Civil Service Reform Act as a "special factor" precluding a *Bivens* remedy).

[7] The CAA incorporates several provisions of Title VII, including the remedies provided by Title VII. *See* 2 U.S.C. §§ 1311, 1317; *Adams v. U.S. Capitol Police Bd.*, 564 F. Supp. 2d 37, 40 (D.D.C. 2008). Under Title VII, it is unlawful for an employer "to discriminate against any of [its] employees . . . because [an employee] has made a charge

10

is a comprehensive remedial scheme that precludes a *Bivens* remedy. *See Ethnic Emps. of the Library of Congress v. Boorstin*, 751 F.2d 1405, 1414-16 (D.C. Cir. 1985) ("[T]his circuit has repeatedly held that federal employees may not bring suit under the Constitution for employment discrimination that is actionable under Title VII."). Consequently, plaintiff's claim is barred due to a "special factor"—specifically, the applicability of the CAA, as an adequate, comprehensive procedural and remedial scheme.[8]

## CONCLUSION

Thus, for all of the foregoing reasons, Defendant's Motion to Dismiss, ECF No. 9, is GRANTED. An appropriate order will accompany this memorandum opinion.

RICHARD J. LEON
United States District Judge

---

... or participated in any manner in an investigation" of discrimination. 42 U.S.C. § 2000e-3(a).

[8] Because a *Bivens* remedy is barred, I will refrain from addressing defendants' qualified immunity argument. *See* Def.'s Mot. to Dismiss, p. 11.

11